1  John Burton, State Bar No. 86029
   jb@johnburtonlaw.com
2  THE LAW OFFICES OF JOHN BURTON
   128 North Fair Oaks Avenue
3  Pasadena, California  91103
   (626) 449-8300
4
   T. Kennedy Helm, IV, State Bar No. 282319
5  kennedy@helmlawoffice.com
   HELM LAW OFFICE, PC
6  644 40th Street, Suite 305
   Oakland, California  94609
7  (510) 350-7517

8  Thomas C. Seabaugh, State Bar No. 272458
   tseabaugh@seabaughfirm.com
9  THE LAW OFFICE OF THOMAS C. SEABAUGH
   355 South Grand Avenue, Suite 2450
10 Los Angeles, California  90071
   (213) 225-5850
11
   Attorneys for Plaintiffs Kelly Hirt and Marshall Hirt, Individually and as
12 Successors in Interest for James D. Hirt, Deceased

13
14                 **UNITED STATES DISTRICT COURT**
15                 **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| KELLY HIRT and MARSHALL HIRT, Individually and as Successors in Interest for JAMES D. HIRT, Deceased,<br><br>v.<br><br>RIVERSIDE COUNTY, RIVERSIDE SHERIFF'S OFFICE, SHERIFF-CORONER CHAD BIANCO, and DOES 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES:**<br><br>**1.   42 U.S.C. § 1983 – Survival**<br><br>**2.   42 U.S.C. § 1983 – Deprivation of Familial Relationship**<br><br>**3.   Americans With Disabilities Act and Rehabilitation Act**<br><br>**4.   Cal. Civ. Code § 52.1**<br><br>**5.   Assault and Battery**<br><br>**6.   Wrongful Death (Negligence)**<br><br>**7.   Cal. Gov't Code § 845.6**<br><br>**8.   Breach of Mandatory Duty**<br><br>**DEMAND FOR JURY TRIAL** |

## JURISDICTION

1. Plaintiffs brings this action pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and the Americans With Disability Act and Rehabilitation Act. Accordingly, federal-question jurisdiction arises under 28 U.S.C. §§ 1331 and 1343(a)(3) and (4). Plaintiffs allege state-law theories of recovery that are so related to the federal claims as to form part of the same case and controversy, and are within the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367.

## PARTIES

2. The Decedent is James L. Hirt, who died at 24 without spouse or issue. Plaintiffs are Decedent's parents. They are his heirs, and have standing to assert the familial-relations, wrongful-death and other claims alleged in this complaint. They sue individually and as their son's successors in interest. They file herewith the required Declaration pursuant to Cal. Civ. Code § 377.32.

3. Defendant Riverside County is a government entity operating pursuant to the general laws of California. Defendant Riverside Sheriff's Office (RSO) is a public agency subject to suit and manages the Riverside County jail system.

4. Defendant Chad Bianco is the Sheriff-Coroner of Riverside County, and is the principal decision maker for the RSO.

5. Does 1 to 10 are unnamed because their identities have yet to be ascertained.

6. Each Doe defendant acted under color of law and within the scope of his or her agency and employment for Defendants County and RSO, and in some manner contributed to the death of Decedent, or otherwise caused the deprivation of Decedent's or Plaintiffs' rights and other harms as alleged below.

7. Plaintiffs are informed and believe and thereon allege that each Defendant was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the acts and omissions alleged, was acting within the course and scope of those relationships, including as an agent and employee of Defendants County and RSO.

8. Plaintiffs are further informed and believe and thereon allege that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and authorized the acts or omissions of each Defendant as alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiffs' and Decedent's constitutional and statutory rights and other harm.

9. Plaintiffs bring these claims pursuant to Cal. Civil Proc. Code §§ 377.20 et seq. and §§ 377.60 et seq., which provide for survival and wrongful-death actions and are incorporated into § 1983 claims through 42 U.S.C. § 1988. Plaintiffs also allege their claims individually and on behalf of Decedent on the basis of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, the Americans With Disabilities Act (ADA) and Rehabilitation Act (RA); Cal. Civ. Code § 52.1, the California Government Tort Claims Act, and other provisions of federal and state civil-rights, statutory and common law.

10. Plaintiffs have attempted to learn more about their son's demise prior to filing this litigation, but their counsel's California Public Records Act requests to the RSO and the Riverside County District Attorney have generated no substantive responses to date, and the Riverside Coroner has not issued his death report. The following facts are based on the meager facts presently available to Plaintiffs, and are alleged to their best information and belief. Plaintiffs anticipate amending this complaint based on the results of discovery.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiffs timely filed a governmental tort claim with the County pursuant to Cal. Gov't Code § 910. The claim was denied by letter mailed on June 3, 2025. Accordingly, Plaintiffs have fully exhausted their administrative remedies as to all state claims. This action is timely filed within all applicable statutes of limitation.

# FACTS

## A. Background

12. Plaintiffs' son James Dennis Hirt lived a normal childhood and adolescence. He became progressively disabled as mental illnesses developed during his later teen-age years, however, manifesting itself in increasingly severe symptoms such as paranoia and risky behavior. He eventually became severely mentally disabled and unable to care for his own safety and welfare. He needed to be housed in a psychiatric hospital. Over the years James was diagnosed with different disorders and prescribed various psychotropic medications. He at times self-medicated with illegal substances and sporadically rejected family support and treatment, as is not uncommon for those afflicted with mental disease. Plaintiffs, of course, stood by their child and did all they could as his parents to help him stay safe and cope with his mental illness.

13. Starting in his teenage years James had multiple arrests in Riverside and San Bernardino counties, generally on minor charges, as well as multiple Cal. Welf. & Inst. Code § 5150 involuntary holds. There were occasions when he was arrested and then released directly to the mental hospital because his behavior was so obviously the product of mental pathologies rather than criminal intent. There were occasions when he was held beyond the 72-hour limit for summary holds.

14. In early June 2022, Decedent was taken into Riverside County custody facing multiple charges. At that time he weighed about 170 pounds. After more than a year as a pretrial detainee, Decedent was transferred to Atascadero State Hospital, where he spent over a year being evaluated for competency to stand trial. He received treatment and prescriptions for mental illness that had various side effects, including extreme weight gain. He improved somewhat until early November 2024, when he was sent back to Riverside County Jail for a court competency hearing. By that time he had ballooned to more than 350 pounds.

15. During this final period in Riverside County custody, Decedent was transferred at least twice to Riverside University Health System, Arlington Mental Health Facility, 9990 County Farm Road, Riverside, because of his severe mental illness. Decedent was returned to Larry D. Smith Correctional Facility, 1627 South Hargrave Street, Banning, California, on December 23, 2024, pending a scheduled appearance on December 30 at a competency hearing in his criminal cases.

### B. The Death of James Hirt

16. Plaintiffs are informed and believe that upon his December 23 return to the County jail system the medical and custody staff did not provide Decedent with appropriate care and medications to control the symptoms of his severe mental illness. Moreover, they housed him in an inappropriate two-inmate cell, when he should have been segregated from other inmates in a psychiatric hospital type setting, and kept under close observation.

17. Plaintiff Marshall Hirt spoke to his son by telephone on Christmas Eve, December 24, 2024. Mr. Hirt could tell there was a problem with his son's medication, that he was not doing as well as he had been at Atascadero and in the University hospital. Decedent called his parents on Christmas night at 8:17 p.m., but was disconnected before Plaintiffs could wish their son a Merry Christmas. Instead, at 2:00 a.m. on December 26 Plaintiffs were awakened by Riverside Sheriff's Office deputies, who informed them that their son had died. No details were provided.

18. According to a subsequent RSO press release, at 8:41 p.m., which would have been less than a half-hour after the attempted telephone call, Decedent was involved in an altercation with another inmate "within a cell," which Plaintiffs understand from their research to have been Housing Unit 16, Dayroom F, Cell 85 at the Smith Correctional Facility. Given his mental illness Decedent should not have been housed with another inmate. In fact, Decedent should not have been housed in a jail at all. Given the degree of his mental illness he should have remained in an appropriate mental health facility.

19. Plaintiffs are informed and believe that jailors, including Does 1 to 10, doused the inmates with chemical agent and used prone restraints and other dangerous tactics while handcuffing, causing Decedent's cardiac arrest. Plaintiffs allege on information and belief that Does 1 to 10 used excessive force, and deliberately, recklessly and negligently denied their son necessary medical evaluation and treatment, and left him unmonitored. Cal Fire paramedics pronounced death at 9:55 p.m.

### C. Policy and Practice Allegations

20. Plaintiffs are informed and believe that the death of their son was proximately caused by the willful acts of agents and employees of the County and RSO, including Does 1 to 10, and the deliberate indifference of the County, the RSO, Sheriff-Coroner Chad Bianco and their agents and employees, including Does 1 to 10, to the health and safety of inmates in the Riverside County Jail system, where policies implemented to protect inmates are ignored without consequences to the staff.

21. Citing one example, during the early morning of October 23, 2020, at the Smith Correctional Facility Inmate Reception Center, an "emergency response team" of correctional deputies filled a sobering cell occupied by an inmate named Chris Zumwalt with chemical agent. They shocked Zumwalt with a shield and Taser, kneed and punched him, and restrained him improperly into a restraint chair with a spit sock over his face. Despite multiple jail regulations requiring an immediate medical evaluation, and a nurse standing by in her office nearby, Zumwalt was moved to another cell, where no one monitored him, and the nurse was sent to attend to another inmate. A supervisor discovered Zumwalt unresponsive about ten minutes later with the spit sock still covering his face. Although all the correctional staff's improper actions were captured on video, no jail deputy was disciplined. When the County's $7.5 million settlement was published in *The New York Times*, Sheriff Bianco said, "The facts of this case clearly show the actions of our deputies were appropriate and lawful."

22. In this case, on December 26, 2024, the day after James Hirt's death and before any meaningful investigation could be conducted, Sheriff Bianco sent the *Riverside Press Enterprise* a knee-jerk email that Decedent was responsible for his own death because he started the fight with the other inmate. "Other than him being the suspect in a one-sided altercation (victim did not fight back) there is nothing abnormal," Sheriff Bianco wrote, as if a 24-year-old inmate dying suddenly in his jail is not "abnormal." Sheriff Bianco continued with a digression unrelated to Decedent, whose death had nothing to do with illicit drugs or suicide:

> The media wants people to believe there is something nefarious going on, which is factually incorrect. The substantial increase (in previous years) was because of fentanyl and suicides, which have substantially increased in society. … RSO personnel, as well as (hospital) personnel, do a commendable job taking care of our inmates and protecting them from themselves. … We do an industry-leading fantastic job in our corrections division and are not responsible for any of these deaths.

23. Prior to 2022, the County averaged about seven jail deaths annually. In 2022, however, there were 19 jail deaths and in 2023 another 14. Eight jail deaths, including Decedent's, were reported in 2024, and seven have already been reported this year. This number of jail deaths is extraordinary, "industry-leading" in a negative sense. The result has been the opening of an investigation by the California Department of Justice, which is ongoing.

24. Moreover, the County, the RSO and Sheriff Bianco do not train their personnel properly in the risk of restraint asphyxia. To the contrary, they direct deputies and correctional deputies to hold individuals, including those who are an agitated state, chest down, which ignores the generally accepted practice of placing people once handcuffed in a recovery position, either on a side or sitting up. (This is especially important for obese people such as Decedent, whose breathing is more compromised by prone restraint.)

25. The County RSO and Sheriff Bianco continued this sometimes deadly practice even after that conduct by two RSO deputies was found negligent by a jury in the July 29, 2019 death of Kevin Neidzialek, a finding affirmed on appeal. *Alves v. Cnty. of Riverside*, 135 F.4th 1161 (9th Cir. 2025).

26. In addition to the foregoing, Plaintiffs are informed and believe, and on that basis allege, that the County and RSO, and their decision makers, including but not limited to Sheriff Chad Bianco, with deliberate indifference, gross negligence, and reckless disregard to the safety, security, and constitutional and statutory rights of Decedent and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies, practices, customs and usages of, among other things,

    (a) Allowing employees to subject people to unreasonable uses of force against their persons when they are impaired and agitated, presenting with a mental-health emergency rather than a law-enforcement problem.

    (b) Failing to adequately train, supervise and control employees in the proper tactics to safely contain and secure persons who are in an agitated, irrational or delusional state using de-escalation tactics.

    (c) Failing to provide adequate mental-health services in the jails, and to adequately train, supervise and control employees in the proper use of medical and mental-health resources, to assist with inmates who are in an agitated, irrational or delusional state.

    (d) Failing to adequately train, supervise and control employees in the use of prone restraints, including but not limited to the risk of compression asphyxia to persons such as Decedent, who are impaired and agitated, and have pre-existing medical and psychiatric conditions, including obesity, which make such tactics particularly dangerous.

(e) Failing to adequately train, supervise and control employees that impaired or agitated persons may have difficulty with certain social interactions, including interactions with other inmates and correctional deputies, including but not limited to difficulty understanding and following commands and directions.

(f) Failing to adequately train, supervise and control employees that they must take into account and make proper accommodations for inmates' current physical and mental condition and related behavioral problems.

(g) Failing to adequately train, supervise and control employees that prone chest compressions and other aggressive restraints impair breathing and can have catastrophic consequences, particularly when used on a person who is impaired or agitated, or obese.

(h) Failing to adequately train, supervise and control employees to monitor the respirations and pulse of agitated and impaired persons during restraint, to place them in a recognized recovery position at the earliest opportunity, and monitor them.

(i) Failing to compel employees to take their training into account, including the principles outlined in subparagraphs (b) through (h), above, and to follow that training when dealing with an impaired or agitated inmate.

(j) Failing to adequately investigate and, when appropriate, discipline or retrain correctional deputies and supervisors involved in misconduct.

(k) Condoning and encouraging correctional deputies and supervisors in the belief that they can violate the rights of inmates such as Decedent with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

(l) Failing to analyze critical incidents such as the Zumwalt incident, the Niedzialek incident, and this incident, and to take appropriate corrective action to prevent recurrences.

The foregoing list is illustrative and not exhaustive.

27. Plaintiff is informed and believes, and thereon alleges, that the County and RSD, and their respective decision makers, including but not limited to Sheriff-Coroner Chad Bianco, ordered, authorized, acquiesced in, tolerated, permitted or maintained custom and usages permitting the other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs or usages set forth in the foregoing paragraph and its subparagraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by defendants or on defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of Decedent.

## DAMAGES

28. Plaintiffs in their individual capacity sustained loss of familial relations, emotional distress and wrongful-death damages including the loss of the comfort, society and love of their son, in an amount in accordance with proof.

29. Plaintiffs incurred medical, burial and other related expenses.

30. Decedent sustained general damages, including pre-death pain and suffering, and the loss of enjoyment of his life, in an amount in accordance with proof.

31. In doing the foregoing wrongful acts, the individual Defendants, Sheriff Chad Bianco and Does 1 to 10, and each of them, acted in reckless and callous disregard for the constitutional rights of Decedent and Plaintiffs. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant (but not the entity defendants, which are immune from such damages) in an amount adequate to punish the wrongdoers and deter future misconduct.

## FIRST CAUSE OF ACTION

(42 U.S.C. § 1983 – Survival)

32. Defendants Does 1 to 10, acting under color of state law, in their individual capacities, deprived Decedent of rights, privileges, and immunities secured by the Constitution and laws of the United States, including those secured by the Fourteenth Amendment to the Constitution, by, among other things, subjecting him to excessive force and being deliberately indifferent to his health, safety and welfare while in County custody as a pretrial detainee. They were deliberately indifferent to his medical needs by housing him in a jail facility rather than a psychiatric hospital, by not properly medicating him, and by housing him with another inmate. They subjected Decedent to excessive force, including but not limited to, chemical agents and the unnecessarily holding him on his chest after handcuffing, preventing him from breathing, along with other excessive and unreasonable restraints, causing him to asphyxiate and die. Does 1 to 10 knew that Decedent's medical and mental-health condition were serious but treatable, and they consciously disregarded his need for and access to medical and mental-health care.

33. Does 1 to 10 recklessly, with both objective and subjective deliberate indifference, disregarded Decedent's serious medical and mental-health conditions and needs, including failing to move him into a recovery position after handcuffing, failing to monitor his condition after being gassed and restrained, and failing to timely remove his handcuffs and obtain medical evaluation and treatment, proximately causing his cardiac arrest and consequent death.

34. Defendants County, RSO and Sheriff Bianco, acting in his individual capacity, promulgated, tolerated and applied, the policies, practices and usages alleged above, which were a moving force that deprived Decedent of rights, privileges, and immunities secured to pretrial detainees by the Fourteenth Amendment and that ultimately caused his death.

35. As a result of Defendants' excessive force and deliberate indifference, as well as the policies, customs, practices and decisions of the County, RSO and Sheriff Bianco, Plaintiffs and Decedent suffered damages as alleged above.

36. Defendants Bianco and Does 1 to 10 subjected Decedent to their wrongful conduct, depriving Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Decedent would be violated by their acts and/or omissions.

37. The conduct of Defendants Bianco and Does 1 to 10 sued in their personal capacities entitles Plaintiffs in their individual and representative capacities to punitive damages and penalties allowable under 42 U.S.C. § 1983. Plaintiffs do not allege punitive damages against Defendants County and RSO, which are immune.

## SECOND CAUSE OF ACTION

(42 U.S.C. § 1983 – Deprivation of Familial Relations)

38. Defendants, acting under color of state law, deprived Plaintiffs of their familial relations without due process of law in violation of the Fourteenth Amendment by their conscious-shocking actions and their deliberate indifference to Decedent's well-being, causing Decedent's death, all in violation of rights, privileges, and immunities secured by the Fourteenth Amendments to the United States Constitution.

39. As a proximate result, Plaintiffs sustained general damages including grief, emotional distress, pain and suffering, and the loss of the care, comfort and society, and special damages in an amount in accordance with proof at the time of trial.

40. In doing the foregoing wrongful acts, the individual Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Plaintiffs and the Decedent. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Defendant (but not the County or RSO, which are immune from such damages) in an amount adequate to punish the wrongdoers and deter future misconduct in an amount according to proof at the time of trial.

**THIRD CAUSE OF ACTION**

(Titles II and III of the ADA, and § 794 of the RA)

41. Congress enacted the Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("RA") because "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

42. Decedent was a "qualified individual" with a mental illness, disability and medical impairments that substantially limited his ability to care for himself and control his mental health as defined under the ADA, 42 U.S.C. § 12131(2), and Section 504 of the RA. 29 U.S.C. § 794; 28 C.F.R. 42.540(k).

43. Defendants County and RSO are public entities. 42 U.S.C. § 12131(1)(A). The ADA applies generally to jail "services, programs, or activities." 42 U.S.C. § 12132. Furthermore, respondent superior liability applies to ADA claims. Defendants County and RSO are therefore liable under the ADA for the unlawful acts of its employees. Under the ADA, Defendants County and RSO are mandated to develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their aegis are protected.

44. Plaintiffs are informed and believe, and thereon allege, that Defendants County and RSO receive federal assistance and funds, and are therefore subject to the RA, 29 U.S.C. § 794. Defendants County and RSO are within the RA mandate that no person with a disability may be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity. 29 U.S.C. § 794.

45. At all material times and as described herein, Decedent:
(a) was an individual with a disability;
(b) was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including jail mental health services, programs, and activities;

(c) was either excluded from participation in or denied the benefits of the County and RSO programs or activities or was otherwise discriminated against by County and RSO; and

(d) such exclusion, denial of benefits or discrimination was by reason of his disability.

46. As described herein, Defendants County and RSO failed to reasonably accommodate Decedent's severe mental disability in the course of jailing him by denying him necessary medical and psychiatric care, including appropriate medication and housing, causing him to suffer greater injury in the process than other detainees or arrestees. The failures to accommodate include but are not limited to:

(a) causing the violation of Decedent's rights through all customs, policies, and practices identified above;

(b) Failing to use lawful and appropriate policies, practices, and procedures for a mentally ill and/or emotionally disturbed person under the circumstances;

(c) failing to transfer Decedent to an inpatient psychiatric facility;

(d) failing to provide Decedent with competent and appropriate medical, mental health, and psychiatric care;

(e) failing to house Decedent in a safe cell where he would not wind up in an altercation with another inmate;

(f) failing to train and implement safe restraint techniques for persons with severe mental illness or obesity;

(g) failing to develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under its aegis are protected; and

(h) other failures to provide accommodations as the evidence in this case may show.

47. As a direct and proximate result of the County's and RSO's violations of the ADA and RA, Decedent died, entitling Plaintiffs to damages and attorneys' fees as set forth herein.

## FOURTH CAUSE OF ACTION

(Cal. Civil Code § 52.1 - Bane Act)

48. Plaintiffs bring this claim in their capacity as Decedent's personal representative, seeking all statutory, compensatory, special and punitive damages allowable under Cal. Civ. Code § 52.1 that survive Decedent's death.

49. By their acts, omissions, customs, and policies, Defendants Does 1-10, as described above, by way of threat, intimidation, and coercion, and with the specific intent to deprive Decedent of his rights, and in reckless disregard for those rights, did deprive Decedent of rights protected under Cal. Civil Code § 52.1 and the following clearly established rights under the laws and constitutions of the United States and California:

(a) Decedent's right to be free from deliberate indifference and excessive force while a pretrial detainee, as secured by the Fourteenth Amendments to the United States Constitution and the California Constitution, Article 1, Sections 7 and 13;

(b) Decedent's right to be free from deliberate indifference to his serious mental-health and medical needs while in custody, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Section 7;

(c) The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1; and

(d) The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

50. Defendants County and RSO are vicariously liable for Bane Act violations committed by their employees pursuant to Cal. Gov't Code § 815.2.

51. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Decedent's rights under the United States and California Constitutions and law, Decedent sustained injuries and damages, and is entitled to relief as set forth above, and punitive damages against Does 1 to 10, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, statutory damages, and attorneys' fees.

## FIFTH CAUSE OF ACTION
(Assault and Battery)

52. Plaintiffs brings this claim individually pursuant to the California wrongful-death statute, and as the personal representatives of Decedent for those damages that survive.

53. As alleged above, Does 1 to 10 assaulted and battered Decedent, causing his death. As a direct and proximate cause of the aforementioned acts of defendants, Plaintiffs lost Decedent's love, society and companionship, and other wrongful death damages in an amount in accordance with proof. Does 1-10 acted with reckless disregard for Decedent's rights, and with malice and oppression such that punitive damages should be awarded to Plaintiffs in their capacity as Decedent's personal representatives. Plaintiffs are not seeking punitive damages against the County or RSO.

54. Defendants County and RSO are vicariously liable for assault and battery committed by their employees pursuant to Cal. Gov't Code § 815.2.

## SIXTH CAUSE OF ACTION
(Wrongful Death — Negligence)

55. Plaintiffs brings this claim individually pursuant to the California wrongful-death statute, and as the personal representatives of Decedent for those damages that survive.

56. As alleged above, employees of County and RSO owed Decedent a duty of due care when housing him as a pretrial detainee and when restraining him. That duty was breached in that Defendants' failed to exercise due care in dealing with Decedent, as alleged above, and as a result proximately caused his death.

57. Defendant Sheriff Chad Bianco knew or should have known that his deputies and correctional deputies were using unsafe restraints, including prone restraints after handcuffing. In the exercise of ordinary care Sheriff Bianco would have trained and instructed his deputies and correctional deputies to use caution when placing subjects or inmates prone while handcuffing, especially those who are obese, and to place them in recovery positions at the earliest opportunity to mitigate the risk of asphyxiation and cardiac arrest.

58. As a result of the foregoing, Plaintiffs lost Decedent's love, society and companionship, and sustained other wrongful death damages, and Decedent sustained those damages that survive, all in amounts in accordance with proof.

59. Defendants County and RSO are vicariously liable for the negligence of their employees pursuant to Cal. Gov't Code § 815.2.

## SEVENTH CLAIM FOR RELIEF

(Cal. Gov't Code § 845.6)

60. Plaintiffs brings this claim individually pursuant to the California wrongful-death statute, and as the personal representatives of Decedent for those damages that survive.

61. Does 1 to 10 knew or had reason to know that Decedent was in need of emergency medical care and failed to take reasonable and immediate action in violation of Cal. Gov't Code § 845.6, proximately causing Decedent's death.

62. As a direct and proximate cause of the aforementioned acts of the individual Defendants, Plaintiffs lost Decedent's love, society and companionship, and other survival and wrongful death damages in an amount in accordance with proof.

63. Defendants County and RSO are vicariously liable for the acts of their employees pursuant to California Government Code § 815.2.

## EIGHTH CAUSE OF ACTION

(Breach of Mandatory Duty)

64. Plaintiffs allege on information and belief that the County, RSO and Sheriff Bianco violated mandatory duties including, but not limited to, those set forth in Cal. Gov't Code § 7286.5(a)(2), which required modification of RSO policy to prohibit "the use of any physical restraint that causes a person's respiratory airway to be compressed or impairs the person's breathing or respiratory capacity, including any action in which pressure or body weight is unreasonably applied against a restrained person's neck, torso, or back, or positioning a restrained person without reasonable monitoring for signs of asphyxia. Cal. Gov't Code § 7286.5(b)(4). In addition all Defendants may have violated mandatory duties imposed by California Code of Regulations Title 15 and Title 24 regarding the housing and monitoring of inmates.

65. Plaintiffs allege that the failures of Defendants to perform their mandatory duties caused Decedent's death, giving Plaintiffs a claim for wrongful-death damages under California law and Decedent a claim for those damages that survive.

66. Defendant County is directly liable for its agents' and employees breaches of mandatory duties, and is vicariously liable for the acts of its employees pursuant to California Government Code § 815.2.

WHEREFORE, Plaintiffs pray for judgment as follows:

**On All Causes of Action:**

a. Compensatory general and special damages in accordance with proof;

b. Costs of suit necessarily incurred herein; and

c. Such further relief as the Court deems just or proper.

**On the First, Second, Third and Fourth Causes of Action:**

d. Reasonable attorney's fees and expenses of litigation.

**On the First, Second, Fourth and Fifth Causes of Action:**

e. Exemplary damages against all Defendants (except the County and RSO) in an amount sufficient to make an example of those defendants and to deter future misconduct.

**On the Fifth Cause of Action:**

f. Statutory damages against the Defendants (except the immune entity defendants, the County and RSD).

Dated:  June 11, 2025          THE LAW OFFICES OF JOHN BURTON
                               HELM LAW OFFICE, PC
                               THE LAW OFFICE OF THOMAS C. SEABAUGH

                                       /s/ John Burton
                                       John Burton
                                    Attorneys for Plaintiffs

**DEMAND FOR JURY TRIAL**

Plaintiffs demand trial by jury on all issues pursuant to Fed. R. Civ. P. 38(b).

Dated: June 11, 2025           THE LAW OFFICES OF JOHN BURTON
                               HELM LAW OFFICE, PC
                               THE LAW OFFICE OF THOMAS C. SEABAUGH

                                       /s/ John Burton
                                       John Burton
                                    Attorneys for Plaintiff